UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LARRY M. HOAK,<br><br>    Plaintiff,<br><br>    vs.<br><br>ATTORNEY GENERAL, WARDEN BLADES, MEDICAL CORIZON, TINA WILLIAMS, STACEY, NATE CHANEY, NATE, DEANNA, HELEN SMITH, LORIE, MARK CUSHING, RUTH, P.A. MITCHELL, P.A. HOLMES, RONA SIEGERT, JOSEPH CORDONA, BRENT RENKI, DR. KATHATAIN, DR. CLARK, DR. SARLERIS, WARDEN SMITH, MARY HICKS, DR. WINNERY,<br><br>    Defendants. | Case No. 1:12-cv-00550-BLW<br><br>**INITIAL REVIEW ORDER** |

The Complaint of Plaintiff Larry M. Hoak was conditionally filed by the Clerk of Court on November 2, 2012, due to his status as an inmate and his request for in forma pauperis status. The Court is required to review the Complaint to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A.

Having reviewed the record, and otherwise being fully informed, the Court enters

**INITIAL REVIEW ORDER - 1**

the following Order.

## REVIEW OF COMPLAINT

### 1.      Standard of Law

Each complaint filed by a prisoner seeking relief against a governmental entity or its employees must be reviewed by the Court to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915A. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, that fails to state a claim upon which relief can be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A.

The Court's review of the Complaint is governed by two United States Supreme Court cases requiring a plaintiff to state facts, and not just legal theories, in a complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). In *Iqbal*, the Court made it clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 129 S.Ct. at 1949. The United States Court of Appeals for the Ninth Circuit explained that these cases set forth two important pleading standards:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

**INITIAL REVIEW ORDER - 2**

All claims must have arisen within the two-year statute of limitations period prior to the filing of the original Complaint. *See Wilson v. Garcia*, 471 U.S. 261 (1985) (later overruled only as to claims brought under the Securities Exchange Act of 1934, not applicable here); Idaho Code § 5-219. The statute of limitations is tolled while the inmate exhausts administrative grievance procedures pursuant to the Prison Litigation Reform Act (PLRA). *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005).

**2.    Plaintiff's Rule 10(c) Motions (Dkt. 7, 8, 9)**

Plaintiff has filed several motions requesting that Federal Rule of Civil Procedure 10(c) be applied to his Complaint and his numerous exhibits submitted in support of his Complaint. Rule 10(c) provides:

> A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.

As the Rule states, a "written instrument" is considered a part of a pleading. However, the items Plaintiff wishes to incorporate into his pleading are not "written instruments" such as copies of contracts or negotiable instruments. *See Rose v. Bartle*, 871 F.2d 331, 339 n. 3 (3d Cir.1989) (internal quotation omitted) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327) (holding that an attached affidavit was not a "written instrument" under Rule 10(c) and thus was not properly considered part of the pleadings); *Nkemakolam v. St. John's Military School*, 876 F.Supp.2d 1240, 1246-47 (D.Kan. 2012) (an x-ray and a photograph were "not

**INITIAL REVIEW ORDER - 3**

intended as assertions of fact," but were "clearly intended as evidence to support specific factual allegations by plaintiffs"). Plaintiff's exhibits are medical records, a surgery photograph, inmate concern forms, prison grievances, and letters.

The Court regularly permits pro se litigants to affix exhibits to their pleadings. However, the Court does not consider the exhibits to be "incorporated by reference" into the complaint such that a defendant would be required to respond to the exhibits when answering such a complaint. To the extent that Plaintiff's exhibits are legible and relevant to Plaintiff's claims, the Court has considered them with regard to whether Plaintiff has stated a claim, or would be able to amend his Complaint to state a claim, pursuant to the Court's duty to screen cases under 28 U.S.C. §§ 1915 and 1915A.

Accordingly, these Motions will be denied, and the exhibits will remain as exhibits only, and will not be incorporated by reference into the Complaint such that Defendants must respond to the exhibits in their Answer. The exhibits need not be filed again by Plaintiff, and the parties may refer to them at appropriate times in the course of this case, as needed.

Plaintiff shall not file any further exhibits, however, until the case reaches an appropriate stage to do so, such as in support of a response to a motion to dismiss or for summary judgment. Plaintiff is reminded that discovery is not to be filed with the Court, but only exchanged between parties at the appropriate time.

**INITIAL REVIEW ORDER - 4**

3.      **Review of Claims**

A.      ***Standard of Law***

To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Vague and conclusory allegations of official participation in civil rights violations are not sufficient. *See Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Rather, "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (there is no respondeat superior liability under §1983).

In *Starr v. Baca*, the United States Court of Appeals for the Ninth Circuit clarified that a supervisory defendant may be held liable under § 1983 if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." 652 F.3d at 1207. Allegations sufficient to show a causal connection include: (1) "setting in motion a series of acts by others"; (2) "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failing to act or improperly acting in "the training, supervision, or control of his subordinates"; (4) "acquiesc[ing] in the constitutional deprivation"; or (5) engaging in "conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1207-08 (internal quotations and punctuation omitted).

**INITIAL REVIEW ORDER - 5**

To state a claim under the Eighth Amendment, Plaintiff must allege facts showing that he is incarcerated under conditions posing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Plaintiff must also state facts showing that Defendants were deliberately indifferent to the substantial risk of serious harm. Deliberate indifference exists when an official knows of and disregards a condition posing a substantial risk of serious harm or when the official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws the inference. *Id.,* 511 U.S. at 837.

### B.    *Summary of Allegations*

Plaintiff alleges that he received inadequate dental care because the dentist decided to pull Plaintiff's problematic teeth, rather than fixing them. Plaintiff also alleges that he is receiving inadequate care for his diabetes, and, particularly, that he has not been given special shoes for his foot problems arising from diabetes. Another claim against several Defendants surrounds a bleeding ulcer. Plaintiff also brings various claims regarding receiving medication.[1] The acts complained of occurred between 2009 and 2012, some of which are beyond the statute of limitations. (Complaint, Dkt. 3, filed November 2, 2012.)

---

[1] Claims that he was not given proper pain medication are mentioned in Grievances from June 15, 2009, March 2010 and April 2010. (Dkt. 1, pp. 90-92.) These dates are beyond the statute of limitations.

INITIAL REVIEW ORDER - 6

C.   *Individual Defendants*

(1)   Dentist Mark Cushing

In the Complaint, Plaintiff states: "I almost died twice when Mark Cushing pulled my abscessed bottom right lower teeth[;] it almost killed me." (Dkt. 3, p. 9.) A Grievance that was returned to Plaintiff on June 14, 2010, further explains: "I've had serious problems with the work (Mark Cushing) has done to my mouth. My mouth, jaw bone, the nerve damage done to my bottom left side, my teeth hurt on the front, left to right, my two upper front teeth. My mouth is a mess." (Complaint Exhibits, Dkt. 1, p. 59.) This entire set of complaints is beyond the statute of limitations period (only claims from between roughly October 2, 2010, to November 2, 2012 may be pursued).

Plaintiff alleges that, in April 2012, Dr. Cushing extracted Plaintiff's teeth rather than saving them or sending Plaintiff to a specialist who could have saved the teeth. Plaintiff has submitted Grievances and other documents showing that his teeth were not healthy enough to be saved, and that the only options were keeping the existing partial that attached to the lower teeth, or pulling the teeth and be fitted with a complete lower denture. (Dkt. 1, Exhibits, p. 66.)

Without more, Plaintiff has not stated sufficient allegations to support an Eighth Amendment deliberate indifference claim. Simply making a choice between extraction of a patient's damaged teeth and another resolution of his dental problems is not a constitutional concern.

**INITIAL REVIEW ORDER - 7**

Plaintiff also alleges that, after Dr. Cushing pulled the four teeth using novocaine, Plaintiff was not given narcotic pain medication to address pain issues after that procedure was performed. Plaintiff alleges that he suffered from pain for five days. Plaintiff alleges that Dr. Cushing chose to give him a different medication because other employees had accused him of "cheeking" (not swallowing) other medications. When Plaintiff wrote an Offender Grievance Form about this issue, employee Jennifer Grace wrote back: "D[ue] to your history of non compliance and being caught cheeking our protocol is not to provide additional narcotics. You were on an anti-inflammatory which would relieve dental associated pain." (Exhibit to Complaint, Offender Concern Form of 4-20-13.) A Grievance Form, No. II 120000474, complained that Plaintiff's mouth and chin were infected on March 30, 2012. Plaintiff was provided with Penicillin for the infection.

Plaintiff has provided no allegations that would support a deliberate indifference claim against Dr. Cushing regarding his decision to follow the medical unit's guidance regarding providing Plaintiff with an anti-inflammatory type of pain medication rather than a narcotic pain medication when Plaintiff *reportedly* had been misusing his medication. Plaintiff was also provided with an antibiotic for infection. While Plaintiff contests the medical unit's conclusion that he was misusing his medication, that is not at issue regarding Dr. Cushing, because nothing shows that Dr. Cushing was personally aware that the medical unit's conclusions were incorrect, and nothing shows that Dr. Cushing chose a course of medication based on deliberate indifference rather than

**INITIAL REVIEW ORDER - 8**

appropriate medical judgment. The response to the Grievance states: "Your case has been thoroughly investigated and there are multiple pages of documentation stating you were guilty of 'cheeking' medication on 3/21/12," which supports Dr. Cushing's decision. (*Id*.) Accordingly, Plaintiff has failed to state a claim against Dr. Cushing for any acts that occurred within the statute of limitations period.

        (2)    <u>Warden Smith</u>

Plaintiff alleges that Warden Smith did nothing after Plaintiff's teeth were pulled. This does not state an actionable claim, because no allegations show that Warden Smith aided or supervised the dentist in pulling out Plaintiff's teeth, or, for that matter, that the dentist violated Plaintiff's constitutional rights by pulling out his teeth or otherwise performing dental work on Plaintiff. Accordingly, Plaintiff may not proceed against Warden Smith on the claim about Plaintiff's dental problems.

Plaintiff also alleges that, as to very high blood sugar and problems with his feet (including failure to provide special shoes), Warden Smith was "aware of the problems," but did nothing. (Complaint, p. 2.) It is not clear how Warden Smith knew of the problems or to which time period Plaintiff is referring, and, thus, the allegations about other medical problems are too vague to permit Plaintiff to proceed against Warden Smith.

**INITIAL REVIEW ORDER - 9**

(3)   <u>Helen Smith</u>

Plaintiff alleges that Helen Smith, an employee who hands out pills to inmates, was one of the persons who accused Plaintiff of hiding medications in his cheek ("cheeking"), causing correctional officers to search Plaintiff's mouth at pill call several times. Plaintiff believes that Helen Smith and Inmate Gillespie had an ongoing romantic relationship, and that Smith harassed Plaintiff possibly because Plaintiff earlier refused Gillespie's request that Plaintiff give his own prescription medication to Gillespie.

Plaintiff further alleges that Helen Smith heard Plaintiff threatening Inmate Brown, but she thought that Plaintiff was threatening her, and Smith reported the perceived threat to a correctional officer. Plaintiff alleges, as to Smith and Inmate Gillespie: "Everyone knows they like each other, after he confronted me I realized why Helen was giving everyone such a hard time. Tony Gillisppi [sic] has been caught cheeking, they took his pain meds away because he was pressuring the old men in medical annex out of the[ir] meds. He's asked me to sell him mine, I said, "No." I have neuropathy." (Dkt. 3, p. 10.)

No constitutional violation lies in this set of speculative allegations. The correspondence Plaintiff has submitted with the Complaint show that prison officials had reason to suspect that Plaintiff was "cheeking" his medication. Even if he was not, there are no plausible allegations that officials were acting out of deliberate indifference rather than because they were trying to follow prison rules. Plaintiff's speculative causal links among the alleged romantic relationship of Helen and Inmate Gillespie, the threat to Inmate Brown, and the allegedly resultant cheeking accusations are implausible under the

**INITIAL REVIEW ORDER - 10**

*Iqbal* standard.

(4)   <u>Dr. Adrian</u>

Plaintiff alleges that Dr. Adrian was giving him insulin that was "killing" him, because he suffered a "bad reaction' to the insulin. When he returned to see Dr. Adrian to inform her about the reaction, he was told that Dr. Adrian was "excused because she had Alzheimer's." (Complaint, p. 12.) Plaintiff has not stated allegations showing Dr. Adrian knew of Plaintiff's "bad reaction" to the insulin prescribed. A Grievance clarifies that Dr. Adrian, prescribed Lantus for Plaintiff from April through May 2010, and then Dr. Lossamann prescribed Lantus again through July 10, 2010, when it was discontinued. The person who answered the Grievance wrote: "I could not find any evidence on the internet or any drug handbook that stated that leg swelling and shortness of breath was a side effect or adverse reaction to Lantus Insulin." (Dkt. 1, p. 44.)

Plaintiff may not proceed against Dr. Adrian, because there are no allegations in the record showing that she knew of Plaintiff's reactions to Lantus; rather, Plaintiff alleges that, when he went back to complain to Dr. Adrian, she was no longer working for Corizon. Further, Plaintiff's Grievance shows that the last time Dr. Adrian provided Lantus to Plaintiff was May 11, 2010, which is beyond the statute of limitation period. (Complaint, Dkt. 1, p. 44.)

(5)    Defendants Stacey, Deanna, Lorrie, and Nate Chaney

Defendants Stacey, Deanna, and Lorrie (or Lorie) (no last names provided), as well as Nate Chaney, were involved in the care of Plaintiff's bleeding ulcer. Plaintiff's version of events is as follows. On Saturday, May 21, 2011, Plaintiff woke up in a sweat at 3:00 a.m., and had to throw up twice. About 5:30 a.m., when it was time for the "diabetic movement," he discovered blood coming from his rectum. Plaintiff's inmate called CMS, and Defendant Lorrie came and took Plaintiff to the medical unit in her golf cart.

Plaintiff's blood sugar levels were checked by Lorrie; they were higher than 550. Plaintiff went to eat breakfast. Lorrie finished her shift and went home, but did not inform anyone about Plaintiff's blood sugar levels. After breakfast, Plaintiff returned to the medical unit, and his blood sugar levels were checked by Defendant Nate Chaney, and the level remained at 550. Chaney then sent Plaintiff back to his cell.

That same day, Plaintiff had blood coming from his rectum again when he went to the bathroom. Plaintiff told Defendant Stacey, who gave him some stool tester strips. Plaintiff told Stacey it was not his colon or hemorrhoids, but she asked him to do the tests anyway.

Plaintiff then talked to Defendant Deanna, a sick call nurse. Plaintiff alleges that when he told her that he was passing blood, she gave him a lecture on a diabetic's body and how to take care of himself. She told him to send in a kite for additional medical care because they did not have a current provider to check his condition. (Complaint, p. 13.)

**INITIAL REVIEW ORDER - 12**

She took his Health Services Request form and said that he would be seen on Monday.

On Sunday, after he went to eat his breakfast meal, Plaintiff was very dizzy, so he went to the medical unit. Nate again visited with Plaintiff and gave him a plastic catcher to obtain a stool sample at about 7:30 a.m. At about 10:30 a.m., Plaintiff went to the bathroom and filled about half of the plastic catcher with blood. Nate came by to check on Plaintiff, and, when he saw the amount of blood in the catcher, he called Cheryl, who said that Plaintiff needed to go downtown, but she needed to obtain Physician Assistant Holmes's approval first. Plaintiff was then restrained, placed in a wheelchair, and taken to the hospital by prison transport. He was diagnosed with bleeding ulcers, and the doctor cauterized the ulcers to stop the bleeding. (Dkt. 1, pp. 75-78.)

As to these Defendants, Plaintiff has not set forth sufficient allegations upon which to proceed on a deliberate indifference claim. Persons who are *not* incarcerated rarely are able to obtain same-day medical care, unless in a circumstance that is instantly life-threatening. While blood in one's stool can be a sign of a serious illness, it is generally one that will require testing and analysis that cannot always be done the same day that medical care is requested.

While Defendant Lorrie did not relay Plaintiff's high blood sugar level to anyone else, Mr. Chaney repeated the test shortly thereafter, with the same results, and no factual allegations of deliberate indifference or actual injury regarding these two tests are contained in the Complaint. Defendant Stacey gave Plaintiff a test kit, as did Mr. Chaney, so that additional information could be gathered about Plaintiff's condition. Plaintiff's

**INITIAL REVIEW ORDER - 13**

condition did not appear to be an emergency at the time he reported it to Deanna, and he had already been given a test kit by Stacey at that time. When Plaintiff's condition became serious, it was treated as an emergency by Mr. Chaney, and Plaintiff was taken to the hospital for emergency care. Without more facts indicating that these medical providers acted out of deliberate indifference rather than reasonable medical judgment, Plaintiff cannot proceed.

(6)   Defendant Holmes

As noted above, P.A. Holmes authorized Plaintiff to be transported to the hospital for bleeding ulcers. Plaintiff alleges: 'I went 2 days bleeding out before she showed her face.' (Complaint, Dkt. 1, p. 18.) Because P.A. Holmes did not do anything further after seeing the amount of blood he had lost other than authorize his transportation to the hospital, and did not order him an ambulance, Plaintiff alleges that she was deliberately indifferent to his condition.

Plaintiff has not stated a deliberate indifference claim against P.A. Holmes on his current allegations. P.A. Holmes authorized emergency medical treatment for him, and it is reasonable that she would allow the hospital medical staff to evaluate and treat him, rather than doing so herself. Plaintiff does not allege what, exactly, P.A. Holmes should have done, other than calling an ambulance rather than using prison transportation. There are no allegations showing that the mode of transportation caused Plaintiff an actual injury. He may not proceed against P.A. Holmes on these allegations.

**INITIAL REVIEW ORDER - 14**

(7)     <u>Other Allegations against Nate Chaney</u>

Plaintiff also alleges that Chaney gave Plaintiff pills the last day Chaney worked at the prison, and that Chaney told Plaintiff he would talk to the medical unit about Plaintiff not receiving his pills. Plaintiff generally alleges that "they" cut off Plaintiff's pills, but the allegations are not specific to any Defendant.[2] A vague Grievance that may describe this incident adds no facts. (Dkt. 1, p. 63.)

Plaintiff also alleges that Mr. Chaney was supposed to call the doctor if the blood sugars were over 415, but Mr. Chaney did not call a doctor. (Complaint, p. 14.) This claim is too vague to proceed upon; in addition, there are no allegations of injury that resulted from this incident. Therefore, Plaintiff cannot proceed on this claim.

Plaintiff also alleges that Mr. Chaney retaliated against him. However, Plaintiff does not provide sufficient allegations to show that Plaintiff exercised a constitutional right, and that Mr. Chaney retaliated because of Plaintiff's exercise of the constitutional right. Plaintiff cannot proceed on this allegation as stated.

(8)     <u>Dr. Song</u>

Plaintiff alleges that a female employee at the pill call window gave him one pill, rather than two. When he asked her why he received only one, she told him that Dr. Song was "cutting off" his medication, but the employee did not know why. Plaintiff later spoke to Dr. Song, and she did not know why, either. (Complaint, p. 14.) No further facts

---

[2] There appears to be an unfinished sentence on the Complaint, page 13, that is numbered "page 5" by Plaintiff.

**INITIAL REVIEW ORDER - 15**

are provided about the cause of the reduction in pills or whether Plaintiff suffered an injury. These allegations are too vague to proceed and state no cause of action.

(9)   N.P. Ruth

Defendant Ruth hands out medication. Plaintiff alleges that, in 2008, right after Dr. Cushing worked on Plaintiff's teeth, she refused to call for the dentist, but just gave him aspirin and Ibuprofen, and he suffered six days of pain. This allegation is beyond the statute of limitations.

(10)   P.A. Mitchell

Defendant Mitchell is a physician's assistant. Plaintiff alleges that he saw P.A. Mitchell for stomach problems. Mitchell gave Plaintiff antacids only. Plaintiff alleges that this was deliberate indifference. This allegation is too vague to state a cause of action, and it is unclear when these acts occurred.

(11)   Defendant Brent Reinke

Brent Reinke is the Director of the Idaho Department of Correction. Plaintiff alleges that the medical care at the prison has not improved since Corizon became the medical provider at the prison. (Dkt. 1, p. 19.) Plaintiff's claims are too vague to permit him to proceed. In addition, Plaintiff has not shown that Reinke was involved in or personally aware of Plaintiff's medical conditions or treatment.

**INITIAL REVIEW ORDER - 16**

(12)   Rona Siegert

Rona Siegert is the medical administrator at ISCI. Plaintiff alleges that Rona Siegert lied about whether she had spoken to Nate Chaney about Plaintiff's prescription medication. (Complaint, Dkt. 1, p. 12.)This allegation is too vague to permit Plaintiff to proceed.

Plaintiff also alleges that he has complained to Defendant Siegert about how he has been receiving inadequate treatment for diabetes, including improper shoes, and that his organs and eyes had been negatively affected by the lack of treatment. (Dkt. 1, p. 19.) Plaintiff may proceed against Ms. Siegert on this claim, to the extent that the allegations fall within the statute of limitations period.

(13)   Joseph Cordona

Joseph Cordona was the contract monitor regarding the medical contract between IDOC and Corizon. Plaintiff alleges that he has contacted Cordona several times concerning his diabetes and diabetic shoes, because the custom shoes that Corizon provides diabetics are "trash." (Complaint, p. 23.) Plaintiff states that Cordona has never done anything for Plaintiff's condition. There are insufficient facts to show that Cordona knew of and ignored Plaintiff's problems. Accordingly, Plaintiff may not proceed against Mr. Cordona.

(14)   Mary Hicks

Mary Hicks is a mental health clinician. The Complaint contains no specific allegations about Ms. Hicks. Because Plaintiff's allegations are too vague, he cannot

**INITIAL REVIEW ORDER - 17**

proceed on this claim.

(15)   Lawrence G. Wasden

Defendant Wasden is the Idaho Attorney General. Plaintiff alleges that the Attorney General is charged by statute with bringing causes of action regarding breaches of contract under Idaho Code § 320-241, and that he has not yet brought a claim against Corizon. Plaintiff has failed to state a claim upon which relief can be granted with these allegations because (1) they are vague; (2) they fail to show that Defendant Wasden had personal knowledge of or participation in Plaintiff's medical care; and (3) Plaintiff has not sufficiently identified a statute or any case law providing for a private cause of action against the Attorney General for failing to bring a breach of contract cause of action against Corizon.

(16)   Tina Williams

Defendant Tina Williams worked for Corizon as a medical administrator at ISCI, and may be Helen Smith's boss. Plaintiff alleges that Williams is retaliating against him through Helen Smith. (Complaint, p. 16.) Plaintiff has not specified any protected conduct he engaged in that could be the basis for a retaliation claim. This allegation is implausible and too vague to proceed upon.

Plaintiff also alleges that Ms. Williams will not reinstate his pain medications, including Neurontin or morphine solute. Plaintiff has failed to state the dates when this occurred and other factual allegations that would support a claim.

(17)   Karren Barnett

**INITIAL REVIEW ORDER - 18**

Plaintiff alleges that Karren Barnett (or Barrett) works for the mental health unit. Plaintiff alleges that Ms. Barrett knows that he has been diagnosed as bipolar, but she refuses to treat him for this condition. A Grievance attached to the Complaint shows that Plaintiff complained of inadequate mental health care received in December 2010 for difficulties arising from his prior assault, and that he was receiving mental health treatment. (Exhibit 31-32.) This set of facts belies his allegation that she refused to treat him. Plaintiff will be not be permitted to proceed against Karren Barnett without additional detailed factual allegations to support his claim.

(18)   Corizon

Corizon is a medical provider contracted to the IDOC to provide medical care. Plaintiff cannot proceed against Corizon on the current allegations because he has alleged insufficient policy-based claims. He may amend his Complaint, as explained below, if he has further factual allegations to meet the legal standard.

To bring a § 1983 claim against a municipality (local governmental entity) or a private entity performing a government function, a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains. *Monell v. Dept. of Soc. Serv. of New York*, 436 U.S. 658, 694 (1978); *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1139 (9th Cir. 2012) (*Monell* applicable to private entities performing government functions). That is, "a municipality [or entity] can be found liable under § 1983 only where the municipality [or entity] itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

**INITIAL REVIEW ORDER - 19**

Requisite elements of a § 1983 policy-based claim against a municipality or entity are the following: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy; (3) the policy amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation. *Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs*., 237 F.3d 1101, 1110-11 (9th Cir. 2001) (citing *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir.1996) (internal quotation marks omitted)).

A municipality or entity may also be sued under a failure-to-train theory, where the failure to train employees amounts to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact,'" and the "municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011). *Id*. at 1359. Ordinarily, to maintain a failure-to-train case, a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Id*. at 1366. Likewise, "a failure to supervise that is 'sufficiently inadequate' may amount to 'deliberate indifference'" that supports a policy-based claim against a municipality. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

All policy-based claims must meet the pleading standards clarified by *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*. That is, mere "formulaic recitation of a cause of action's elements" is insufficient. *Twombly*, 550 U.S. at 555. Stated another way, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**INITIAL REVIEW ORDER - 20**

(19)   <u>Butch Otter</u>

Plaintiff alleges that Governor Otter is aware of the violence, unprofessionalism, and violations of inmate civil rights occurring at the prison. Plaintiff attaches a letter he wrote to the governor on October 31, 2012. (Dkt. 3, p. 22.) These allegations are too vague to permit Plaintiff to proceed or to show that the governor was aware of or personally participated in the alleged constitutional violations.

(20)   <u>Claim without Defendants</u>

Plaintiff states that he had a pinched nerve in his arm for two years before he was sent to a surgeon to have it repaired. (*Id*., p. 20.) There is no particular defendant who allegedly committed this constitutional violation and no time period specified. Therefore, Plaintiff may not proceed on this claim.

(21)   <u>Defendants without Claims</u>

The Court discerned no factual allegations particular to Defendants Dr. Khatain, Dr. Saleris, or Dr. Winnery in the Complaint; their names are simply mentioned in the caption. Therefore, Plaintiff cannot proceed against these Defendants.

**4.   Conclusion**

At this time, Plaintiff may proceed only against Rona Siegert for improper treatment of diabetes. Plaintiff may not proceed against those Defendants against whom he has stated insufficient factual allegations, where he has not identified actions that occurred within the statute of limitations period, or where he has not identified a particular person who caused the alleged harm. Plaintiff may amend his complaint by

**INITIAL REVIEW ORDER - 21**

filing a motion to amend and a proposed amended complaint within 150 days after entry

of this Order. Also within 150 days, Plaintiff may also provide facts showing that his

claims are timely, or that equitable estoppel should be applied to permit him to proceed

on other claims.[3]

      This Order does not guarantee that any of Plaintiff's claims will be successful; it

merely finds that one or more is colorable, meaning that the claims will not be summarily

dismissed at this stage. Defendants may still file a motion for dismissal or motion for

summary judgment if the facts and law support such a motion. This Order is not intended

to be a final or a comprehensive analysis of Plaintiff's claims. It is Plaintiff's burden to

thoroughly set forth the legal and factual basis for each claim. The Court will not appoint

counsel for Plaintiff at this time, but will reconsider appointing counsel on the Court's

own motion later in this case after the Court has had opportunity to review Defendants'

responses and the medical records.

## ORDER

**IT IS ORDERED:**

---

[3] The Idaho Supreme Court has determined that "[s]tatutes of limitation in Idaho are not tolled by judicial construction but rather by the expressed language of the statute." *Wilhelm v. Frampton*, 158 P.3d 310, 312 (Idaho 2007). Idaho statutorily tolls the limitations period for a person's minority status or insanity. I.C. § 5-230. Early filing of a case pending resolution of a previous case will not necessarily result in dismissal in Idaho, but rather a stay or injunction is available to preserve one's rights. *Wilhelm v. Frampton*, 158 P.3d at 312. The theory of equitable estoppel is also available. While it "does not 'extend' a statute of limitation," it works in a similar manner to prevent a party who has falsely represented or concealed a material fact with actual or constructive knowledge of the truth "from pleading and utilizing the statute of limitations as a bar, although the time limit of the statute may have already run." *J.R. Simplot Co., v. Chemetics International, Inc.*, 887 P.2d 1039, 1041 (Idaho 1994).

1.      Plaintiff's Rule 10(c) Motions (Dkt. 7, 8, 9) are DENIED, to the extent as set forth above.

2.      Plaintiff's Motion to Proceed in Forma Pauperis (Dkt. 1) is GRANTED. A separate fee order will issue to require payment of the $350 filing fee in increments when and as monies are deposited into his prison trust account.

3.      Plaintiff's request for appointment of counsel (contained in the Complaint) is DENIED without prejudice. The Court will reconsider this request at a later date when additional evidence regarding the merits of the claims has been submitted by Defendants.

4.      Defendant Rona Siegert shall be allowed to waive service of summons by executing, or having her counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within thirty (30) days. If Defendant chooses to return the Waiver of Service of Summons, the answer or pre-answer motion shall be due in accordance with 12(a)(1)(A)(ii). Accordingly, the Clerk of Court shall forward a copy of the Complaint (Dkt. 3), and a copy of this Order, and a Waiver of Service of Summons to the following counsel:

Mark Kubinski, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706 on behalf of Defendant Siegert.

5.      Should any entity determine that the individuals for whom counsel for the

**INITIAL REVIEW ORDER - 23**

entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, indicating which individuals for whom service will not be waived.

6.      If Plaintiff receives a notice from Defendant indicating that service will not be waived for an entity or certain individuals, Plaintiff shall have an additional sixty (60) days from the date of such notice to file a notice of physical service addresses of Defendant, or his claims will be dismissed without prejudice without further notice.

7.      Plaintiff shall have one hundred fifty (150) days after entry of this Order to file a motion to amend his complaint.

8.       The parties shall not engage in any discovery until an answer has been filed. Within thirty (30) days after an answer has been filed, the parties shall provide each other with the following voluntary disclosures: all relevant information pertaining to the claims and defenses in this case, including the names of individuals likely to have discoverable information, along with the subject of the information, as well as any relevant documents in their possession, in a redacted form if necessary for security or privilege purposes; and, if necessary, they shall provide a security/privilege log sufficiently describing any undisclosed relevant documents which are alleged to be

**INITIAL REVIEW ORDER - 24**

subject to nondisclosure. Any party may request that the Court conduct an in camera review of withheld documents or information. If, instead of filing an answer, Defendant files a motion to dismiss under Federal Rule of Civil Procedure 12, disclosures and discovery shall be automatically stayed with the exception that Defendant shall submit with any motion to dismiss for failure to exhaust administrative remedies a copy of all grievance-related forms and correspondence, including a copy of original handwritten forms submitted by Plaintiff that either fall within the relevant time period or that otherwise relate to the subject matter of a claim.

9.     Each party shall ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party shall sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made. The Court will not consider *ex parte* requests unless a motion may be heard *ex parte* according to the rules and the motion is clearly identified as requesting an *ex parte* order, pursuant to Local Rules of Civil Practice before the United States District Court for the District of Idaho 7.2. ("*Ex parte*" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other

party to the litigation.)

10.     All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

11.     Discovery shall not be filed with the Clerk of Court, but shall be exchanged between parties, only, as provided for in the Federal Rules of Civil Procedure. Motions to compel discovery shall not be filed unless the parties have first attempted to work out their disagreements between themselves.

12.     No party may have more than three pending motions before the Court at one time, and no party may file a motion on the same subject matter if he or she has another motion on the same subject matter currently pending before the Court.

13.     Plaintiff shall notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

**INITIAL REVIEW ORDER - 26**

DATED:  **May 29, 2013**



Honorable B. Lynn Winmill
Chief U. S. District Judge

**INITIAL REVIEW ORDER - 27**