UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LARRY M. HOAK,<br><br>                Plaintiff,<br><br>   v.<br><br>RONA SIEGERT,<br><br>                Defendant. | Case No. 1:12-cv-00550-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff Larry M. Hoak, a prisoner in the custody of the Idaho Department of Correction (IDOC), is proceeding pro se and in forma pauperis in this civil rights action. Pending before the Court is Defendant Rona Siegert's Rule 12(b)(6) Motion to Dismiss. (Dkt. 45.) Also pending are several motions filed by Plaintiff, including a request for preliminary injunctive relief. (Dkt. 43, 47, 51.) Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. D. Idaho Loc. Civ. R. 7.1. Accordingly, the Court enters the following order granting Defendant's Motion in part and denying Plaintiff's request for a preliminary injunction.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

Plaintiff initially filed this civil rights action in November 2012. The Court granted Plaintiff's application for in forma pauperis status and reviewed the Complaint, which asserted claims against numerous defendants, pursuant to 28 U.S.C. §§ 1915 and 1915A. The Court determined that Plaintiff stated a plausible Eighth Amendment claim against Defendant Siegert based on Plaintiff's allegedly inadequate medical treatment for his diabetes. (Dkt. 11 at 17.) The Complaint did not state a plausible claim for relief against any other named defendant. The Court also noted that Plaintiff could file a motion to amend, along with a proposed amended complaint, if he desired to do so. (*Id.* at 21-22.)

Defendant Siegert filed a first motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and Plaintiff filed an Amended Complaint. (Dkt. 14, 20.) Before the Court considered the motion to dismiss, the Court found that Plaintiff had previously filed at least three civil actions that had been dismissed for failure to state a claim upon which relief could be granted. (Dkt. 25.) Because the Court also concluded that Plaintiff had not shown that he was in imminent danger of serious physical injury, he was not allowed to proceed in forma pauperis in the instant action, pursuant to 28 U.S.C. § 1915(g). The Court revoked Plaintiff's in forma pauperis status and ordered him to pay the filing fee in full. (*Id.*) When Plaintiff did not do so, the Court dismissed the case and entered judgment. (Dkt. 27, 28.)

The Ninth Circuit disagreed with the Court's conclusion that Plaintiff had not sufficiently alleged that he was in imminent danger of serious physical injury and

**MEMORANDUM DECISION AND ORDER - 2**

remanded the case. This Court then vacated its previous revocation of Plaintiff's in forma pauperis status and ordered Defendant to respond to the Amended Complaint. (Dkt. 41.) Defendant did so by filing a second motion to dismiss under Rule 12(b)(6).

## PRELIMINARY MOTIONS

Plaintiff has filed two motions that ask the Court to consider additional material, consisting primarily of records of Plaintiff's administrative grievances: (1) a "Motion: Readout of Account Resent Appealed Grievances" (Dkt. 43); and (2) a "Motion: Rule 15, 2, D Supplemental Pleadings" (Dkt. 47). The Court will grant these motions, but only to the extent that the documents will be considered to be supplemental attachments to the Amended Complaint. This Order does not prohibit any party from later arguing that the documents are inadmissible for other purposes.

## DEFENDANT'S MOTION TO DISMISS

**1.    Standards of Law**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate if there is a lack of any cognizable legal theory or a failure to plead sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

A complaint fails to state a claim for relief if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

**MEMORANDUM DECISION AND ORDER - 3**

*Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotation marks omitted).

Although a plaintiff must provide sufficient facts to survive a motion to dismiss, providing too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of Los Angeles,* 119 F.3d 778, 783, n. 1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other ... evidence on summary judgment establishes the identical facts"). "Although Federal Rule of Civil Procedure 8(a)(2) requires only that a plaintiff's complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' by going beyond the bare minimum, a plaintiff may plead herself out of court." *Warzon v. Drew,* 60 F.3d 1234, 1239 (7th Cir. 1995) (quoting *Thomas v. Farley,* 31 F.3d 557, 558–59 (7th Cir. 1994)).

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court generally should not consider materials outside the complaint and pleadings. *See Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997). However, the court may consider attachments to the complaint and any document referred to in (even if not appended to)

**MEMORANDUM DECISION AND ORDER - 4**

the complaint, where the authenticity of such a document is not in question. *Id*. at 622-23. A court may also take judicial notice of matters of its own records, *In re Korean Air Lines Co., Ltd., Antitrust Litigation*, 642 F.3d 685, 689 n.1 (9th Cir. 2011), and public records, such as records and reports of administrative bodies, *Barron v. Reich*, 13 F.3d 1370 (9th Cir. 1994).

**2.     Discussion**

Plaintiff asserts three broad claims in his Amended Complaint: (1) claims that he is receiving inadequate medical and dental care; (2) claims that he has suffered retaliation; and (3) claims that he was improperly cited with a Disciplinary Offense Report ("DOR").

**A.     *Eighth Amendment Medical Care Claims***

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, a prisoner must show that he is "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of Defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc). The Eighth Amendment includes the right to adequate medical care in prison, and prison officials or

**MEMORANDUM DECISION AND ORDER - 5**

prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, the Supreme Court of the United States has explained that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

> The Ninth Circuit has defined a "serious medical need" in the following ways:
>
>> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain . . . .

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official or prison medical provider acts with "deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and

**MEMORANDUM DECISION AND ORDER - 6**

internal quotation marks omitted). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. However, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003) ("[D]eliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm.").

In the medical context, a conclusion that a defendant acted with deliberate indifference requires that the plaintiff show both "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted).

**MEMORANDUM DECISION AND ORDER - 7**

Where a defendant's alleged knowledge of a substantial risk to a prisoner's health comes from grievances submitted by the prisoner though the administrative grievance process, the administrative or supervisory defendants who were involved in that process might or might not have liability for the constitutional violations complained of in the grievances submitted by the prisoner, depending on (1) the type and timing of the problem addressed by the grievance and (2) the role of the defendant in the process. For example, a grievance coordinator or reviewer cannot cause or contribute to a *completed* constitutional violation that occurred in the past and that is not remediable by any action the reviewer might take. *See, e.g., George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."); *see also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a [prison] grievance procedure."); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (stating that defendants whose "only roles in [a civil rights] action involve the denial of administrative grievances . . . cannot be liable under § 1983").

If, however, the alleged constitutional violation is ongoing, and the defendant reviewing the inmate concern form or grievance has the duty and authority to review the propriety of the medical treatment and take action to remedy the alleged deficiencies— not by providing medical care themselves, but by obtaining the answer to whether the medical care was proper from a person with medical training and directing a remedy to be implemented—then a cause of action does lie, because, under supervisory liability

**MEMORANDUM DECISION AND ORDER - 8**

principles applicable in § 1983 actions, the defendant knew of an "ongoing constitutional violation and . . . had the authority and opportunity to prevent the ongoing violation." *Herrera v. Hall*, 2010 WL 2791586, at *4 (E.D. Cal. July 14, 2010) (unpublished) (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).

Where claims are asserted against administrators or persons who supervise the provision of prison medical care, the question is not whether the administrator or supervisor was "directly involved" in the plaintiff's diagnosis, but whether the plaintiff has sufficiently alleged that the supervisor's knowing failure to address the treating provider's deficient care interfered with Plaintiff's medical treatment. *See Gonzalez v. Ahmed*, 67 F. Supp. 3d 1145 (N.D. Cal. 2014). For example, in *Gonzalez*, summary judgment was denied as to the supervisory liability of Dr. Chudy in reviewing Dr. Ahmed's care of the plaintiff under the following circumstances:

> Under Plaintiff's version of the facts, Dr. Ahmed flatly refused to examine him because Dr. Ahmed was tired at the end of the day. Plaintiff further alleges that Dr. Chudy and Dr. Sepulveda knew that Dr. Ahmed had denied Plaintiff care, but nonetheless ordered Plaintiff to return to Dr. Ahmed's care.

*Id.* at 1156-57 (internal citations omitted).

The *Gonzalez* court further determined that the plaintiff's complaints to Dr. Chudy were not merely about past health care, but "referred to an ongoing and substantial risk to his health, and requested that Dr. Ahmed's actions be investigated so as to prevent future incidents." *Id.* at 1158. The court further denied Dr. Chudy's request for application of qualified immunity, reasoning that, "under Plaintiff's version of the facts, a prison

**MEMORANDUM DECISION AND ORDER - 9**

official could not reasonably believe that forcing Plaintiff to return to Dr. Ahmed's care unsupervised would not be an effective denial of, or intentional interference with, Plaintiff's necessary medical treatment." *Id.*

In this case, Plaintiff's Amended Complaint describes his medical treatment for his diabetes, as well as some dental treatment that resulted in Plaintiff's teeth being pulled. (Am. Compl., Dkt. 20.) From Plaintiff's allegations, it is plain that none of the individual health care providers who personally participated in this treatment are named as defendants. Rather, Plaintiff sues only Defendant Siegert, the IDOC Health Services Director.

The only specific allegation against Siegert in the Amended Complaint *itself* is that Siegert "knowingly of [sic] Plaintiffs Dibetis [sic] was out of control. H. R. S. High blood sugar test, in computant [sic] doctors doing nothing by ignoring the problem or not knowing what to do. Killing my eyes, kidneys, all my vital organs." (*Id.* at 1; *see also id.* at 4 (same).) However, the Court has also reviewed the grievances submitted by Plaintiff. (*See* Dkt. 43, 47.) These documents appear to give rise to a plausible inference that Siegert was aware of at least some of Plaintiff's concerns about his diabetes treatment— which he describes in a fair amount of detail in the amended complaint—and that she might not have addressed those concerns. See *Gonzalez*, 67 F. Supp. 3d 1145.

For these reasons, Defendant's motion to dismiss will be denied as to Plaintiff's diabetes treatment claims. However, to the extent that Plaintiff alleges that the prison food is not healthy enough for diabetics, he may not proceed on such claims against Defendant Siegert because he had not plausibly alleged that Siegert is responsible for, or

**MEMORANDUM DECISION AND ORDER - 10**

has any influence in, the decisions as to the types of food served to prisoners. Further, because nothing in the Amended Complaint tends to suggest that Siegert was aware of Plaintiff's complaints about his *dental* treatment, those claims will be dismissed.

The Court does not intend to imply that Plaintiff has properly exhausted all of the claims he asserts with respect to his diabetes treatment; that determination will be made, if necessary, at a later date. However, because it is plausible that—through the grievances Plaintiff submitted—Defendant Siegert was made aware of at least some of Plaintiff's concerns about his diabetes treatment, yet allegedly did not intervene to identify or correct the problem, Plaintiff will be allowed to proceed on his diabetes treatment claims at this time.

### B.     Retaliation Claims

A First Amendment retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, . . . that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Although a "chilling effect on First Amendment rights" is enough to state an injury, *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of arbitrary retaliation" are insufficient to state a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985). "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such

**MEMORANDUM DECISION AND ORDER - 11**

as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.").

But not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry in determining whether a plaintiff has stated a viable retaliation claim "asks whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks omitted). If it would not, then "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted). *See also Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) ("The [*de minimis*] standard achieves the proper balance between the need to recognize valid retaliation claims and the danger of federal courts embroiling themselves in every disciplinary act that occurs in state penal institutions.") (internal quotation marks and alteration omitted); *ACLU of Maryland, Inc. v. Wicomico County*, 999 F.2d 780, 786 n.6 (4th Cir. 1993) (per curiam) ("[T]hese § 1983 plaintiffs suffered no more than a *de minimis* inconvenience and . . . , on the facts of this case, such inconvenience does not constitute cognizable retaliation under the First Amendment.").

Plaintiff asserts that various medical providers have retaliated against Plaintiff because they believed that Plaintiff was "cheeking" his pills. (Dkt. 20 at 20-24.)

**MEMORANDUM DECISION AND ORDER - 12**

However, Plaintiff has not provided any plausible allegations suggesting that Defendant Siegert participated in the alleged retaliation, or that any retaliatory action was undertaken because of Plaintiff's protected conduct. Therefore, Plaintiff's retaliation claims will be dismissed.

### C.     Due Process Claims

The right to procedural due process of law under the Fourteenth Amendment prohibits the government from depriving an individual of a liberty or property interest without following the proper procedures for doing so. *Wolff v. McDonnell*, 418 U.S. 539, 558-66 (1974). Only claims involving a "liberty interest" are actionable. To succeed on a procedural due process claim regarding disciplinary proceedings in prison, a plaintiff must establish (1) that he possessed a liberty interest in avoiding discipline, and (2) that the defendant deprived him of that interest as a result of insufficient process. *See Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000).

Plaintiff alleges that he was improperly cited with a DOR. But, as Plaintiff acknowledges, he was found not guilty of that DOR. Therefore, even if Plaintiff could show that he had a liberty interest in avoiding punishment for the DOR, it is clear that he was not deprived of any such interest. Plaintiff's due process claims will be dismissed.

### PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF

Plaintiff seeks preliminary injunctive relief. The purpose of a Rule 65 preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions of the parties until the merits of the action are ultimately determined. *University of Texas v.*

**MEMORANDUM DECISION AND ORDER - 13**

*Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction may be granted if the moving party demonstrates the following elements: (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and (4) the public interest favors granting relief. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987).

"Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Dominion Video Satellite v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001). A threshold issue is whether there is a sufficient "relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir. 2015). In particular, the movant must show that the preliminary injunction would grant "relief of the same character as that which may be granted finally." *Id.* (internal quotation marks omitted). If the movant cannot show that a relationship or nexus exists, "the district court lacks authority to grant the relief requested." *Id*.

In deciding whether to issue a preliminary injunction, the Court "is not bound to decide doubtful and difficult questions of law or disputed questions of fact." *Internat'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Industries, Inc. v. Tapewriter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)). A court "is not obliged to hold a hearing [on a motion for a preliminary injunction] when the movant has not presented a colorable factual basis to support the

**MEMORANDUM DECISION AND ORDER - 14**

claim on the merits or the contention of irreparable harm." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3rd Cir. 1990).

In addition, in the prison context, the Prison Litigation Reform Act ("PLRA") provides that "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(2). In considering whether to order preliminary injunctive relief, "[t]he court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." *Id.*; *accord Nelson v. Campbell*, 541 U.S. 637, 650 (2004).

Although Plaintiff has alleged sufficient facts to proceed on some of his claims, at this early stage of the proceedings the Court cannot conclude that he is likely to succeed on the merits. Therefore, Plaintiff's Motion will be denied.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's "Motion: Readout of Account Resent Appealed Grievances" (Dkt. 43) is GRANTED IN PART to the extent set forth above.

2. Plaintiff's "Motion: Rule 15, 2, D Supplemental Pleadings" (Dkt. 47) is GRANTED IN PART to the extent set forth above.

3. Defendant's Second Motion to Dismiss Pursuant to FRCP 12(b)(6) (Dkt. 45) is GRANTED IN PART and DENIED IN PART. Plaintiff may proceed on his Eighth Amendment diabetes treatment claims against Defendant Siegert. All of Plaintiff's other claims are DISMISSED.

4.  Plaintiff's request for preliminary injunctive relief, entitled a "Motion: Request Injunction for Relief Money Damages, Injunction Requesting the Court to Order Medical and the Prison to Change What There [sic] Doing the Treatment of Dibetics [sic]" (Dkt. 51), is DENIED.

5.  Defendant shall answer the Amended Complaint **within 21 days** after entry of this order. Defendant must answer the allegations contained in the Amended Complaint itself (Dkt. 20) as to the claims remaining in this action, but Defendant need not answer the allegations contained in the other documents submitted by Plaintiff.

DATED: **March 30, 2016**

_____
B. Lynn Winmill
Chief Judge
United States District Court