UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LARRY M. HOAK,<br><br>                Plaintiff,<br><br>   v.<br><br>RONA SIEGERT,<br><br>                Defendant. | Case No. 1:12-cv-00550-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff, a prisoner in the custody of the Idaho Department of Correction ("IDOC"), is proceeding pro se and in forma pauperis in this civil rights action. Now pending before the Court in this civil rights matter is Defendant Siegert's Motion for Summary Judgment.

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 7.1. Accordingly, the Court enters the following Order granting Defendant's Motion and dismissing this case with prejudice.

## BACKGROUND

1. **Procedural Background**

Plaintiff filed the instant civil rights action against numerous Defendants—both prison officials and prison medical providers—asserting Eighth Amendment medical

**MEMORANDUM DECISION AND ORDER - 1**

treatment claims with respect to his medical care for several conditions. The Court granted Plaintiff in forma pauperis status. In the Court's Initial Review Order, Plaintiff was allowed to proceed only on his claim that Defendant Siegert violated the Eighth Amendment with respect to the treatment Plaintiff has received for his diabetes. (Dkt. 11 at 21.) On October 24, 2013 (mailbox rule), Plaintiff filed an amended complaint, which added some claims. (Dkt. 20.)

The Court then determined that Plaintiff had at least three previous actions dismissed for failure to state a claim upon which relief could be granted, and the Court revoked Plaintiff's in forma pauperis status pursuant to 28 U.S.C. § 1915(g). (Dkt. 25.) After Plaintiff failed to pay the filing fee, the Court dismissed this action. (Dkt. 27.)

The Ninth Circuit vacated and remanded, determining that Plaintiff had sufficiently demonstrated that he was in "imminent danger of serious physical injury" for purposes of the exception to the three-strikes provision in § 1915(g). (Dkt. 38.) This Court reopened the case and granted Plaintiff in forma pauperis status. (Dkt. 41, 42.) Defendant Siegert filed a motion to dismiss, which the Court granted in part and denied in part. (Dkt. 52.) The Court concluded that the Amended Complaint stated a plausible Eighth Amendment claim against Defendant Siegert with respect to Plaintiff's medical treatment for his diabetes. (*Id.*)

Defendant Siegert has moved for summary judgment. (Dkt. 63.) The Court has denied Plaintiff's motion to stay, which the Court construed as a Rule 56(d) motion, because it did not "establish any specific reason why Plaintiff cannot properly prepare his

**MEMORANDUM DECISION AND ORDER - 2**

opposition to Defendant's Motion for Summary Judgment." (Dkt. 66 at 2.) Defendant's Motion for Summary Judgment is now ripe for consideration by the Court.

## 2. Undisputed Facts

This section includes facts that are undisputed and material to the resolution of the issues in this case. Because Plaintiff has not disputed most of Defendant's Statement of Undisputed Facts ("SOUF" or "Statement"), the following factual recitation is taken primarily from that Statement and the documents supporting it. (*See* Dkt. 63-2.) The Court will note the areas where Plaintiff disputes the Statement and will accept Plaintiff's version of the facts as to those disputes for purposes of this decision.

Plaintiff is incarcerated at the Idaho State Correctional Institution. The IDOC contracts with a private company that provides medical treatment to Idaho state prisoners. Defendant Siegert is the Health Services Director for the IDOC; her job is "to oversee the medical contractor's provision of medical services to IDOC facilities." (*Id.* ¶ 3.)

Although Siegert is a registered nurse, she "does not provide patient care in her role as the Health Services Director." (*Id.*) Instead,

> Siegert audits inmate medical files; monitors the contract medical provider, the contract with the contract medical provider, the NCCHC [National Commission on Correctional Health Care] standards, and IDOC policy and procedures; and investigates medical-related issues or complaints she receives, discovers, and/or are brought to her attention, including through concern forms and grievances. Siegert is the appellate authority for offender grievances concerning health care.
>
> Siegert supervises nurse managers and a contract monitor who assist in the oversight of medical services provided to inmates.

**MEMORANDUM DECISION AND ORDER - 3**

(*Id.* ¶¶ 4-5.) Joseph Cardona is one of the nurse managers whom Defendant Siegert supervises. He is also a registered nurse. (Cordona Aff., Dkt. 63-4, ¶¶ 3-4.)

Plaintiff's diabetes renders Plaintiff "a chronic care patient." (SOUF ¶ 8.) As such, he "is scheduled to [see] a provider for his diabetes at regular intervals, but at a minimum of every ninety (90) days." (*Id.*) Despite this ongoing treatment, Plaintiff's "blood sugar levels have remained high and his weight has steadily increased." (*Id.*) Plaintiff's organs and his eyes remain relatively healthy and are not failing. According to Mr. Cardona, Plaintiff "has not maintained compliance with [his] diet, medication, and exercise recommendations." (*Id.*, citing Cardona Aff. ¶ 7.) Plaintiff disputes this portion of Defendant's Statement and alleges that Cardona "has no clue" and "has no idea about [Plaintiff's] situation." (Dkt. 67 at 2.) Therefore, the Court will assume that Plaintiff generally has been compliant with the recommendations of his medical providers with respect to his diabetes treatment.

Defendant Siegert's role in Plaintiff's diabetes treatment was limited to the grievance process. Between November 2010 and September 2015, Siegert received or responded to five concern forms, and acted as the appellate review authority on four grievances related to Plaintiff's diabetes treatment. (SOUF ¶¶ 6-7; First Siegert Aff., Dkt. 14-2, ¶¶ 10-11; Second Siegert Aff., Dkt. 63-3, ¶ 7.)

On January 4, 2012, Plaintiff submitted a grievance complaining that "Medical does not care about the seriousness of [his] health." (First Siegert Aff. ¶ 10(a) and Ex. A at 1-2.) Plaintiff complained that, on December 31, 2011, he received insulin from a staff member who did not first consult a doctor; Plaintiff also appeared to have concerns about

**MEMORANDUM DECISION AND ORDER - 4**

the type or amount of insulin given to him on that occasion and "felt like [he] was going into a coma." (*Id.*) Defendant Siegert reviewed Plaintiff's medical file and "determined that on December 29, 30, and 31, the appropriate amount of insulin was provided to [Plaintiff] based upon his blood sugar levels and the medical provider's insulin order." (*Id.* ¶ 10(a).) In her response to Plaintiff's grievance, Siegert stated,

> [T]he correct amount of insulin, per the provider ordered sliding scale, is being administered. Again, according to the sliding scale a provider is to be notified if the blood sugar is greater than 500. On December 29, 30 and 31 none of your blood sugars were greater than 500, therefore, no provider would have been notified of your blood sugar level."

(Ex. A to First Siegert Aff.) Siegert also "noted the appointment [Plaintiff] had since he filed the grievance where his insulin level was adjusted, as well as his upcoming appointment. (First Siegert Aff. ¶ 10(a) and Ex A.)

On October 8, 2012, Plaintiff submitted a concern form concerning issues he was having with his feet, including "hammer toes and ulcers under [his] toes, [and] purple bottoms of [his] feet." (*Id.* ¶ 11(a) and Ex. B.) Siegert received the concern form on October 10 and arranged for a medical provider to evaluate Plaintiff's feet. (*Id.*) Plaintiff was evaluated the next day, but the medical provider examining him determined that Plaintiff "did not meet the criteria for medical shoes at that time." (*Id.* ¶ 11(b).)

In November 2012, Plaintiff submitted another concern form, claiming that he was still waiting to see a medical provider regarding diabetic shoes. (*Id.* and Ex. C.) Defendant Siegert responded to the concern form, stating that Plaintiff was, indeed, seen on October 11 and that medical shoes were determined not to be medically necessary at

that time. (*Id.*) Plaintiff eventually received new shoes, on March 1, 2013, and new insoles on June 28, 2013. (Second Siegert Aff. ¶ 7(a).)

Plaintiff submitted a grievance on June 17, 2013, complaining about pain in his feet, hammer toes, and his request for specialty shoes and a right boot arch. (*Id.* and Ex. A.) Siegert responded as the appellate authority in August 2013, noting the previous issuance of shoes and insoles to Plaintiff and directing Plaintiff to submit a Health Services Request form ("HSR") at his "next chronic disease appointment" if he believed he required additional or different shoes. (*Id.*)

The Director of the IDOC received a concern form from Plaintiff on July 15, 2013. That concern form raised numerous complaints, including Plaintiff's concern about his blood sugar levels and a statement that Plaintiff's insulin "does not work." (*Id.* ¶ 7(d) and Ex. D.) This concern form was routed to Defendant Siegert, who responded, "Issues noted." (*Id.*)

Plaintiff submitted another concern form on June 4, 2014. In this concern form, Plaintiff complained that the person who gave him his insulin injection on June 1 had mixed different types of insulin. (*Id.* ¶ 7(e) and Ex. E.) Siegert responded to Plaintiff, informing him that mixing insulin "is standard practice." (*Id.*)

On July 29, 2014, and September 15, 2014,[1] Plaintiff grieved the issue of the insulin that he received on June 1. (*Id.* ¶ 7(b) and Ex. B.) The grievance complained that

---

[1] Plaintiff submitted a grievance dated July 29, but he was "directed to rewrite the grievance." (Ex. B to Second Siegert Aff.) He did so, and the rewritten grievance was received by prison staff on September 15, 2014. (*Id.*)

**MEMORANDUM DECISION AND ORDER - 6**

the provider "might have [given the insulin] wrong." Plaintiff stated that after he received the insulin, he "started coughing real bad and [he] could not breath [sic]." (Ex. B to Second Siegert Aff.) Two providers responded that Plaintiff's blood sugars did not indicate any medication error and that Plaintiff's belief that he was given an overdose was unsubstantiated. (*Id.*) Acting as the appellate authority on the grievance, Siegert noted that Plaintiff's allegation that he had almost been killed was "exaggerated and unfounded." (*Id.*) She also stated that if Plaintiff continued to have shortness of breath, he should submit an HSR and "follow the sick call process." (*Id.*)

On June 22, 2015, Plaintiff submitted a concern form to Siegert, once again complaining that the "drug amounts" of his insulin "do[] not work." (Ex. F to Second Siegert Aff.) Siegert reviewed Plaintiff's medical records and recommended that Plaintiff "discuss these concerns with his provider during his next chronic disease appointment." (Second Siegert Aff. ¶ 7(f).)

On July 6, 2015, Plaintiff filed another grievance regarding his diabetes treatment, this time stating his concerns about the kind of insulin he was receiving. (*Id.* ¶ 7(c).) Plaintiff believed that his current insulin, as well as other types of insulin he had received, did not work and made his body "suffer[] over the years. My liver, eyes[,] kidneys." (Ex. C to Second Siegert Aff.) Plaintiff stated that he felt it was "time to try something else." (*Id.*) As the appellate authority reviewing the grievance, Defendant Siegert reviewed Plaintiff's medical file and noted that, since Plaintiff had filed the grievance, his medical providers had changed his insulin and scheduled him for a follow-up appointment to discuss how the new insulin was working. (Second Siegert Aff. ¶ 7(c)

**MEMORANDUM DECISION AND ORDER - 7**

and Ex. C.) Given that Plaintiff's concerns had been addressed, Siegert directed Plaintiff to discuss any further insulin concerns at his follow-up appointment or at his next chronic care appointment. (*Id.*)

Defendant Siegert states that she did "not receive[] any information that would have led [her] to believe [Plaintiff] was not receiving appropriate medical care for his diabetes." (Second Siegert Aff. ¶ 11.) Outside of the concern forms and grievances described above, Defendant Siegert was not notified of any problems or concerns of Plaintiff regarding his diabetes treatment, "including any concerns regarding damage to [Plaintiff's] eyes or organs as a result of his diabetes." (*Id.*)

## DISCUSSION

1. **Standard of Law Governing Summary Judgment**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, there must be no *genuine*

**MEMORANDUM DECISION AND ORDER - 8**

dispute as to any *material* fact in order for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact should be "presented in a form that would be admissible in evidence," or it may be subject to being stricken. Fed. R. Civ. P. 56(c)(2).[2] Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

---

[2] In determining admissibility for summary judgment purposes, it is the content of the evidence, rather than its form, that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the content of the evidence could be presented in an admissible form at trial, the content may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony would not be hearsay).

**MEMORANDUM DECISION AND ORDER - 10**

Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Ninth Circuit "ha[s] repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988) (citation and internal quotation marks omitted). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain "testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document." *Id.*

2.     **Standards of Law Applicable to Plaintiff's Claim Against Siegert**

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, a prisoner must show that he is "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of Defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc). The Eighth Amendment includes the right to adequate medical care in prison, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently

**MEMORANDUM DECISION AND ORDER - 11**

harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, the Supreme Court of the United States has explained that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain . . . .

*McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official or prison medical provider acts with "deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted). "Under this standard, the prison official must not only

**MEMORANDUM DECISION AND ORDER - 12**

'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. However, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003) ("[D]eliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm.").

In the medical context, a conclusion that a defendant acted with deliberate indifference requires that the plaintiff show "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted).

Differences in judgment between an inmate and prison medical providers regarding appropriate medical diagnosis and treatment are not enough to establish a

**MEMORANDUM DECISION AND ORDER - 13**

deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)); *see also Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998) ("A plaintiff can show that the [medical] professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances.").

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam). A delay in treatment does not violate the Eighth Amendment unless the delay causes further harm. *McGuckin*, 974 F.2d at 1060. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

Defendants who were involved in reviewing claims in the administrative grievance process may or may not be liable for the constitutional violations complained of regarding actual grievances they processed, depending upon (1) the type and timing of problem complained of and (2) the role of the defendant in the process. For example, an

**MEMORANDUM DECISION AND ORDER - 14**

appeals coordinator cannot *cause* or *contribute to* a *completed* constitutional violation that occurred in the past and that is not remediable by any action the reviewer might take. *See, e.g., George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

If, however, the alleged constitutional violation is ongoing, and the defendant reviewing the inmate concern form or grievance has the duty and authority to review the propriety of the medical treatment and take action to remedy the alleged deficiencies (not by providing medical care themselves, but by obtaining the answer to whether the medical care was proper from a person with medical training and directing a remedy to be implemented), then the defendant may indeed be liable, because, under supervisory liability principles applied in § 1983 actions, the defendant knew of an "ongoing constitutional violation and . . . had the authority and opportunity to prevent the ongoing violation." *See Herrera v. Hall*, 2010 WL 2791586, at *4 (E.D. Cal. July 14, 2010) (unpublished) (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).

Therefore, where claims are asserted against persons who supervise the provision of prison medical care, the question is not whether the supervisor was "directly involved" in the plaintiff's diagnosis. *See Gonzalez v. Ahmed*, 67 F.Supp.3d 1145, 1156 (N.D. Cal. 2014). Rather, the question is whether the plaintiff has provided evidence from which a

jury could find that the supervisor's knowing failure to address the treating provider's deficient care interfered with the plaintiff's medical treatment.[3]

### 3. Defendant Siegert Is Entitled to Summary Judgment

The undisputed material facts are sufficient for Defendant Siegert to meet her initial burden of showing that she is entitled to judgment as a matter of law. According to Siegert, she never received any information that led her to believe that Plaintiff was at a substantial risk of serious harm from his diabetes treatment. Plaintiff was consistently and regularly examined at his chronic disease appointments, and was also evaluated at additional appointments scheduled by his providers, throughout the time period relevant to Plaintiff's claims. The type and dosage of the insulin Plaintiff received was adjusted when it appeared necessary, and Plaintiff received medical shoes and insoles. Therefore, Siegert has sufficiently demonstrated that medical providers were "consistently responsive to [Plaintiff's] medical needs" and that Siegert did not have "subjective knowledge and conscious disregard of a substantial risk of serious injury" to Plaintiff

---

[3] For example, in *Gonzalez*, summary judgment was denied as to the supervisory liability of Dr. Chudy in reviewing Dr. Ahmed's care of the plaintiff under the following circumstances:

> Under Plaintiff's version of the facts, Dr. Ahmed flatly refused to examine him because Dr. Ahmed was tired at the end of the day. Plaintiff further alleges that Dr. Chudy and Dr. Sepulveda knew that Dr. Ahmed had denied Plaintiff care, but nonetheless ordered Plaintiff to return to Dr. Ahmed's care.

*Id.* The *Gonzalez* court determined that the plaintiff's complaints to Dr. Chudy were not merely about past health care, but "referred to an ongoing and substantial risk to his health, and requested that Dr. Ahmed's actions be investigated so as to prevent future incidents." *Id*. The court further denied Dr. Chudy's request for application of qualified immunity, reasoning that, "under Plaintiff's version of the facts, a prison official could not reasonably believe that forcing Plaintiff to return to Dr. Ahmed's care unsupervised would not be an effective denial of, or intentional interference with, Plaintiff's necessary medical treatment." *Id*. at *9.

**MEMORANDUM DECISION AND ORDER - 16**

based on his diabetes treatment. *Toguchi*, 391 F.3d at 1061. The burden thus shifts to Plaintiff to establish a genuine dispute of material fact as to Siegert's approach to Plaintiff's diabetes treatment. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

Plaintiff has failed to do so. With the possible exception of Plaintiff's July 15, 2013 concern form—which was sent initially to the Director of the IDOC and then forwarded to Defendant Siegert for a response—each time Siegert reviewed one of Plaintiff's concern forms or grievances, she reviewed his medical records and relied on her own medical expertise (*e.g.*, by explaining that mixing insulin is standard medical practice or advising him to follow the sick call process) in responding to Plaintiff. Based on that review and expertise, Defendant Siegert reasonably determined that Plaintiff was receiving adequate treatment for his diabetes.

In the July 15, 2013 concern form, Plaintiff complained of several different issues. With respect to his diabetes treatment, Plaintiff stated, "My blood sugars has [sic] been 250 pluse [sic], I sweat like a pig and there [sic] insullent [sic] does not work. My eyes, my kidney they are not working right. This prison needs to change for the better, no one has sentenced me to a slow death." (Ex. D to Second Siegert Aff.) Although Defendant Siegert might have reviewed Plaintiff's medical records prior to responding to Plaintiff (with the simple phrase, "Issues noted"), it is unknown whether she in fact undertook such a review.

If Defendant did not review Plaintiff's medical records after she became aware of the July 5 concern form, that could perhaps indicate that she might have been negligent. However, negligence or medical malpractice is not enough to establish an Eighth

**MEMORANDUM DECISION AND ORDER - 17**

Amendment violation. *See Broughton v. Cutter Labs.*, 622 F.2d at 460. Siegert's response to the July 5 concern form does not demonstrate a genuine dispute of material fact, nor does it tend to suggest that Siegert subjectively drew an inference that Plaintiff was at a substantial risk of serious harm as a result of his diabetes treatment. See *Farmer*, 511 U.S. at 837.

## CONCLUSION

For the reasons set forth above, there exists no genuine dispute as to any material fact with respect to Plaintiff's claim that Defendant Siegert violated his Eighth Amendment right to adequate diabetes treatment. Therefore, Defendant Siegert is entitled to judgment as a matter of law.

## ORDER

**IT IS ORDERED** that Defendant Siegert's Motion for Summary Judgment (Dkt. 63) is GRANTED. This case is DISMISSED with prejudice.

DATED: July 27, 2017

B. Lynn Winmill
Chief Judge
United States District Court